ODD FELLOWS' BLDG. ASS'N v. NAYLOR, County Treasurer.

No. 3266.    Decided Dec. 19, 1918.    (177 Pac. 214.)

TAXATION—EXEMPTIONS—BUILDING USED FOR CHARITABLE PURPOSES. Where a building owned by a charitable association was in part rented out to stores, the income being used only to keep the building in repair and for charitable and benevolent purposes, the part of the building rented out to the stores was not exempt from taxation, under Const. art. 13, section 3.[1]

Appeal from the District Court of Salt Lake County, Third District; *Hon. J. Louis Brown,* Judge.

Action by the Odd Fellows' Building Association against Raymond C. Naylor, County Treasurer.

Judgment for defendant.    Plaintiff appeals.

AFFIRMED.

*G. M. Sullivan* for appellant.

*Richard Hartley,* County Atty., and *D. A. Skeen,* Asst. County Atty., for respondent.

THURMAN, J.

---

[1] *Parker* v. *Quinn,* 23 Utah, 332, 64 Pac. 961; *Elks* v. *Groesbeck,* 40 Utah, 9, 120 Pac. 192, Ann. Cas. 1914C, 940.

The plaintiff paid taxes for the year 1916 upon a certain lot and part of the building situated thereon in Salt Lake City, Utah. The taxes were paid under protest, and this action was brought to recover the money so paid.

No question arises on the pleadings. A stipulation was entered, into between the parties, which was adopted by the court as its findings of fact, from which findings it concluded the defendant was entitled to judgment, and judgment was entered accordingly. From the judgment so entered plaintiff prosecutes this appeal.

The only contention made by appellant in its brief is that, under the stipulated facts, the court erred in entering judgment for the defendant.

The corporate capacity of the plaintiff, and ownership of the lot and building thereon, are admitted. It is likewise admitted that defendant, as county treasurer of Salt Lake County, in 1916, served plaintiff with notice of an assessment for general taxes on a portion of said property for that year, and that the plaintiff, to protect its rights, paid said taxes under protest.

The material facts found by the court under the stipulation are, in substance, as follows: That the plaintiff is a corporation, its stockholders consisting of various lodges, each and every one being a duly organized branch of the Grand Lodge Independent Order of Odd Fellows of the State of Utah; that the building owned by plaintiff is a three-story brick, with lodge halls and rooms comprising the second and third floors, and storerooms comprising the first or ground floor; that the second and third floors, in 1916 and previous years, were used by said stockholders under a lease for lodge purposes, and by other benevolent and fraternal organizations, under lease, for the same purpose during certain nights each week; that all of said organizations during 1916 paid plaintiff for the second and third floors as rent the sum of $2,290; that the rooms on the first floor, to a depth of about thirty feet, were rented to individual private concerns during said year for the sum of $900; that the rear part of said first floor was rented to various tenants of the building as a banquet hall, and was used in connection with the lodge halls on

the second and third floors; that the valuation placed on the
building for tax purposes in 1916 was intended only to cover
the value of the first floor, and that the tax levied was upon
such valuation only; that the rent collected for 1916 was
applied and used as follows, to pay upkeep, repair, heat, light,
salary of manager, and the balance to apply on the original
indebtedness and interest incurred in the construction of the
building; that after applying said rentals for the purposes
above named said expenses have been paid by contribution
of plaintiff's stockholders; that the plaintiff has been in-
debted for the construction of said building ever since 1892;
that the plaintiff's stockholders were not organized nor main-
tained for pecuniary profit, but for benevolent and charitable
purposes, and for teaching fraternity, benevolence, and truth,
to relieve distress, bury the dead, educate the orphans, and
render financial assistance to their dependent members and
families, and to others not members; that for the year 1916
plaintiff's stockholders expended for charity $2,370 to mem-
bers and their families, and to nonmembers and their families
$643; that each of said stockholders collects monthly dues
from its members to carry out the general purposes of the
organization, as before set forth; that said building was con-
structed only for the purpose of enabling the stockholders to
successfully and efficiently carry out the purposes aforesaid;
that said premises have been used exclusively by said plaint-
iff and its stockholders, directly and indirectly, for such
purpose; that when the debts incurred for the construction
of said building are fully paid it is the purpose of plaintiff
and its stockholders to use the funds received from the rentals
of said premises as follows: (1) In the payment of the up-
keep of the building, including the heating, light, janitor
services, and salary of the manager; (2) to return the excess
to the stockholders of plaintiff in proportion to their stock,
which excess shall be paid by said stockholders into the gen-
eral fund, to be used as hereinbefore set forth; that the
premises are occupied by plaintiff's stockholders for the
sole and only purpose of carrying out the purposes of the
organization, as hereinbefore stated, and the funds received
by plaintiff as rentals for the building have been mingled with

114        SUPREME COURT OF UTAH.        [Dec.

Odd Fellows' Bldg. Ass'n v. Naylor, 53 Utah 111.

and used in the same way and for the same purposes as funds paid by the various individual members of the lodges, stockholders of the plaintiff; that the fundamental law of the Grand Lodge Independent Order of Odd Fellows prohibits the use of rentals from said building from ever being used by any of the stockholders for pecuniary profit to said subordinate lodges or any member thereof.

In stating the facts upon which the question of law arises we have indulged in greater prolixity perhaps than is necessary to a determination of the question involved; but as the objection to the judgment is general, and not to any specific finding of fact, we have thought it safer to state too much, rather than incur the risk of omitting some material fact.

The undisputed facts being as above stated, the questions presented for determination are, was the property assessed legally assessable, and did the court err in rendering judgment for the defendant?

The Constitution of this state, article 13, section 3, in part provides:

"Lots with the buildings thereon used exclusively for either religious worship or charitable purposes, and places of burial not held or used for private or corporate benefit, shall be exempt from taxation."

A statute made in pursuance of this provision of the Constitution uses exactly the same language. Hereafter, our reference will be to the constitutional provision only.

Appellant's contention is "that lots with the buildings thereon used exclusively for either religious worship or charitable purposes," within the meaning of the Constitution, are exempt from taxation when the revenue derived therefrom is devoted exclusively to either of the purposes above named, without regard to the actual use to which the property is put by the tenant or lessee. This must of necessity, be the contention of the appellant, inasmuch as the property assessed for taxation in the present case was leased by the plaintiff to individual private concerns. What their business was does not appear, but it is safe to assume that they did not use the premises exclusively for either religious

worship or charitable purposes. If that had been so, the stipulation, undoubtedly, would have disclosed the fact.

On the other hand, respondent contends that the exclusive use to which the property is put, and not the proceeds or rental derived therefrom, determines the question as to whether or not it is exempt from taxation within the purview of the Constitution.

In our opinion this identical question has already been determined by this court in a case in which all the members of the court concurred. *Parker* v. *Quinn*, 23 Utah, 332, 64 Pac. 961.

In that case the plaintiffs were trustees for the Fifteenth Ward Relief Society, a charitable organization, and as such trustees held the title to certain premises situated in Salt Lake City. The premises consisted of a two-story brick building, the upper story of which had been used continually by the association for the holding of meetings and performance of work by its members in the furtherance of its charitable purposes. The charitable purposes of the association consisted primarily in ministering to the poor, sick, and destitute members of the community. The lower floor of the building contained two storerooms, one of which was rented for $12.50 per month, and the other was being offered on the same terms, but was vacant. When the action was commenced all of the rental received by the association from the premises in question was devoted to charitable purposes, and the members of the association served without remuneration. In 1900 the premises were assessed for taxes, and suit was instituted against the treasurer of Salt Lake County to enjoin taxation on the premises as long as they were used for charitable purposes. The trial court found that the land was valued at $1,060, the building and improvements thereon at $1,000, and that a fair apportionment of the assessment on the building was $600 for the lower story and $400 for the upper. The court, however, found for the defendant, and dismissed the action. This court, on appeal, reversed the judgment, and directed the trial court to modify the same by exempting the upper story of the building, which had been used by the

association exclusively for charitable purposes, and sustained the judgment as to the remainder of the premises.

The contention of the appellants in that case was the same as that of appellant here, that as long as the proceeds, rentals, and receipts of the association from the premises in question were used exclusively for charitable purposes, the premises were exempt, under Revised Statutes of Utah 1898, then in force. The language of that statute, so far as applicable to this case, was the same as the constitutional provision above quoted. The court, in deciding the question, speaking through Hon. George W. Bartch, then justice, after commenting upon the rule that statutes exempting property from taxation are construed strictly against the exemption, and after quoting the constitutional provision and statute above referred to, said:

"It will be noticed that the provisions of the Constitution and of the statute are practically the same, except that the statute omits the words 'municipal corporations'; but this omission is not material in this case. The exemptions thus expressly granted, as we have seen, form an exception to the general rule that every species of property within the state is liable to bear its just proportion of the public burden. Any property falling within the exception is released from this burden, and such release is justified on the theory that the state derives some peculiar benefit, whatever that may be, from such property. Among the several classes of property exempt are 'lots with the buildings thereon used exclusively for either religious worship or charitable purposes.' In the case at bar the 'relief society,' which owns and manages the property over which this controversy arose, was organized and acts exclusively for charitable purposes. It ministers to the poor, sick, and destitute of the community. Its purposes are excellent, and the means adopted commendable, and no doubt the state is measurably benefited by having its poor and helpless subjects under the benign protection and care of such a society. If, therefore, in the fundamental law, in addition to specifying lots and buildings thereon used 'exclusively' for charitable purposes, rentals derived from such buildings, and used for such purposes, were also enumerated, we would have

no difficulty in this case in declaring the whole property, including the portion rented and held for rent, exempted from taxation; but the lawmakers did not see fit to exempt such rentals in express terms, and we can furnish no aid by construction. Only such of the society's property, therefore, as is occupied and used 'exclusively' for charitable purposes is exempt from taxation. It follows that the exemption does not extend to that portion not appropriated by the society to its own use, but held as a source of revenue. Especially is this so since the value of each portion is ascertainable as appears from the findings of the court. Where, therefore, as in this case, a portion of certain property owned by a charitable institution is occupied and used by it for charitable purposes, and the other portion thereof is devoted to purposes of revenue, the portion used and occupied for charitable purposes is exempt, and the portion not so used and occupied is subject to taxation.''

Unless the doctrine enunciated in that case is wrong, especially the excerpt from the opinion which we have quoted at considerable length, it is difficult to see how the appellant's contention in the present case can be upheld. But the doctrine there enunciated was expressly approved in a later case (*Elks* v. *Groesbeck*, 40 Utah, 9, 120 Pac. 192, Ann. Cas. 1914C, 940). There Mr. Justice McCarty delivered the opinion of the court, in the course of which, at page 21 of 40 Utah, at page 199 of 120 Pac. (Ann. Cas. 1914C, 940), he said:

''Respondent, in support of his contention that the property in question is not, in the meaning of the law, used exclusively for charitable purposes, cites the case of *Parker* v. *Quinn*, 23 Utah, 332, 64 Pac. 961. In that case the Fifteenth Ward Relief Society, a charitable organization, owned a two-story brick building, the upper story of which was used continuously by the society for the holding of meetings and the performance of work by its members in furtherance of its charitable purposes. The lower floor of the building contained two store-rooms, one of which was rented for $12.50 per month, and the other, at the time the case was tried, was offered for rent. The rental received was used for charitable purposes. The plaintiff claimed that the property, including the two rooms which were held merely as a source of revenue, the use of which had nothing to do with the charitable work of the society, was exempt from taxation. The court held, and properly so,

that the portion of the building which was not used by the organization for its own purposes, but was kept as an investment for business purposes, was not exempt from taxation.''

Then the learned justice proceeds to quote approvingly the latter portion of the excerpt above quoted from the opinion of Mr. Justice Bartch.

The case of *Parker* v. *Quinn,* supra, is the only case thus far decided by this court involving the identical question presented by this appeal. As we have shown, the doctrine of that case is approved and confirmed by the opinion in the case of *Elks, etc.,* v. *Groesbeck,* supra, and, as these are the only decisions by this court relating to the question presented here, we are unable to see why they should not control our determination of the present case, unless there is some infirmity in the decisions affording substantial reasons why they should be overruled.

Appellant in this case makes no attempt to avoid the force and effect of the decision in the Quinn Case by trying to distinguish its facts from those in the case at bar. Indeed, in our judgment, it would be futile to attempt a distinction that could in any manner aid the appellant in the position it has assumed. But while it does not attempt a distinction as to the facts, appellant does insist, with considerable force and ingenuity, that the construction given to the constitutional provision in both the Quinn and the Elks Cases is wrong, and in its brief proceeds to place its construction upon the provision, by which construction it seems to think a different conclusion should have been arrived at by the court. While we are of the opinion that, even if the construction contended for by appellant were adopted, it could not aid it in its present contention, still out of deference to the views of appellant's counsel, who urges the importance of a different construction, we will here undertake to state his position. He insists, in effect, as we understand it, that the constitutional provision should be construed as if it read as follows: Lots, with the buildings thereon, used exclusively for religious worship, when not held for private or corporate benefit, shall be exempt from taxation. Lots, with the buildings thereon, used exclusively for charitable purposes, when not held or used

for private or corporate benefit, shall be exempt from taxation. Places of burial, not held or used for private or corporate benefit, shall be exempted from taxation. It must be admitted that counsel, by his analysis of the provision, has made his conception of its meaning exceedingly clear and intelligible. It makes the clause, ''not held or used for private or corporate gain,'' a qualifying clause for each of the purposes for which the property shall be exempt, instead of merely qualifying ''and places of burial'' only, which latter we had hitherto supposed was its plain and natural meaning. If we have accurately reflected the position of counsel as to the real meaning of the Constitution, then, in the last analysis, his contention is, as we assumed in the beginning, that as long as the character of the property mentioned in the Constitution, or the rents, issues, and receipts therefrom, are used exclusively for religious worship, charitable purposes, or places of burial, without private or corporate benefit, said property shall be exempt from taxation.

We submit that such a construction, in our judgment, would amount to an absolute perversion of the plain meaning and intent of the framers of the Constitution and the citizens of the state who afterwards voted for its adoption. If we will consider for a moment the situation to which such a construction could and might possibly lead, every person of average intelligence must at once arrive at the conclusion that such cannot be the meaning and intention of the Constitution. To begin with, it must be conceded that the owners of property, to be exempt within the purview of the Constitution, are not limited to ecclesiastical or charitable organizations, but the exemption privilege is extended to the class of property mentioned, without regard to the character of its owner. The owner may be a church organization, a charitable or fraternal organization, or it may be a private individual or a corporation. It will also be conceded, we assume, that a very large proportion of the taxpayers of the state of Utah annually contribute considerable sums to the maintenance of religious worship and for charitable purposes. The aggregate of these contributions would undoubtedly, amount to millions. Now, let us suppose that these taxpayers,

whether individuals or corporations, should conceive the idea that, inasmuch as they intend to contribute in any event to these religious and benevolent purposes, they will do so in such manner as to avoid the payment of taxes on a substantial portion of their property. Each of them, in pursuance of this idea, invests in a lot or lots, with a building or buildings, to such an extent that the income derived from the rents, issues, and profits of the property will pay for the upkeep and repair thereof and enough over to satisfy his conscience respecting his religious and charitable obligations. Not a dollar for private or corporate gain is within the contemplation of the owner, but in the utmost good faith the owner intends to use every cent of the income, except sufficient for the upkeep and repair, for religious or charitable purposes. The assessor appears on the scene; he attempts to assess the property, and the owner says he is using that property exclusively for religious worship, or that he is using it exclusively for charitable purposes and not for private or corporate benefit. Under the contention of counsel for appellant, we do not see why this could not be done. If it can be done by an ecclesiastical or charitable organization it can be done by an individual or corporation who devotes the income to religious or charitable purposes. If such were done we have no means of knowing what the loss in revenue to the state would be, but the sum would unquestionably be so vast as to forever preclude the idea that the Constitution is susceptible of any such construction as that contended for by appellant. On this question we unqualifiedly approve that portion of the opinion in the Quinn Case, heretofore quoted, wherein the learned justice says:

"If, therefore, in the fundamental law, in addition to specifying lots and buildings thereon used 'exclusively' for charitable purposes, rentals derived from such buildings and used for such purposes were also enumerated, we would have no difficulty in this case in declaring the whole property, including the portion rented and held for rent, exempted from taxation; but the lawmakers did not see fit to exempt such rentals, in express terms, and we can furnish no aid by construction. Only such of the society's property, therefore, as is occupied and used 'exclusively' for charitable purposes, is exempt from taxation. It follows that the

exemption does not extend to that portion not appropriated by the society to its own use, but held as a source of revenue.''

The question involved is of supreme importance, both to the taxpayers of the state at large and to the owners of property claiming exemption from taxation. For that reason we have quoted at considerable length from the opinion in the Quinn Case, which we cannot consider in any other light than as conclusive and controlling in the present case.

Much has been said in argument upon the question as to whether or not a strict or liberal construction, should be adopted in seeking to ascertain the meaning of the constitutional provision involved. In our judgment, as contended by respondent, ''there is no room for construction.'' The language is plain, unequivocal, and unambiguous. The building itself, or the portion thereof for which exemption is claimed, as distinguished from the rent or income derived therefrom, must be used exclusively for religious worship or charitable purposes. This we believe to be the plain meaning of the Constitution, whether we adopt a strict or a liberal construction. The opinion in the Quinn Case by an undivided court held that to be the true meaning, and, as before suggested, the court in the Elks Case unanimously adopted the same view, although disagreeing on other questions not pertinent to this appeal.

As to the question of a strict or liberal construction, if it were at all controlling in this case, we might suggest that appellant has no reason whatever to complain. A strict construction of the constitutional provision, as we understand it, would subject the entire building to taxation, for the reason that it is not all used *exclusively* for religious worship or charitable purposes. We are clearly of the opinion that the court in the Quinn Case adopted an exceedingly liberal construction when it held that the property might be segregated for purposes of taxation.

From our point of view it would serve no useful purpose to bring in review the decisions of courts in other jurisdictions. As will appear from a careful examination of the cases cited in the opinion in the Elks Case, supra, the decisions of courts in other states of the Union. because of vary-

ing statutes, are more or less in conflict on this and cognate questions, and any attempt to harmonize them would perhaps result in hopeless confusion.

In conclusion it is sufficient to say that on the single question presented for our consideration, and the one on which this case must be decided, our own decisions are entirely harmonious. We see no reason for departing from the views therein expressed as far as the question presented here is concerned.

For the foregoing reasons the judgment of the trial court is affirmed, at appellant's costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.